1 | LERACH COUGHLIN STOIA
       & ROBBINS LLP
2 | PATRICK J. COUGHLIN (111070)
   | 100 Pine Street, Suite 2600
3 | San Francisco, CA  94111
   | Telephone:  415/288-4545
4 | 415/288-4534 (fax)
   |            – and –
5 | WILLIAM S. LERACH (68581)
   | DARREN J. ROBBINS (168593)
6 | 401 B Street, Suite 1700
   | San Diego, CA  92101
7 | Telephone:  619/231-1058
   | 619/231-7423 (fax)
8 |
   | GELLER RUDMAN, PLLC
9 | PAUL J. GELLER
   | 197 S. Federal Highway, Suite 200
10 | Boca Raton, FL  33432
   | Telephone:  561/750-3000
11 | 561/750-3364 (fax)
12 | Attorneys for Plaintiff
13 |
14 |                    UNITED STATES DISTRICT COURT
15 |                 NORTHERN DISTRICT OF CALIFORNIA
16 | RICHARD CURTIS, On Behalf of Himself      )   No.
   | and All Others Similarly Situated,        )
17 |                                           )   CLASS ACTION
   |                              Plaintiff,   )
18 |                                           )   COMPLAINT FOR VIOLATION OF THE
   |        vs.                                )   FEDERAL SECURITIES LAWS
19 |                                           )
   | BEA SYSTEMS, INC., ALFRED S.              )
20 | CHUANG, CHARLES L. ILL, III and           )
   | THOMAS M. ASHBURN,                        )
21 |                                           )
   |                             Defendants.   )
22 | _____   )   DEMAND FOR JURY TRIAL
23 |
24 |
25 |
26 |
27 |
28 |

**INTRODUCTION AND OVERVIEW**

1.     This is a securities class action on behalf of all purchasers of the publicly traded securities of BEA Systems, Inc. ("BEA" or the "Company") between November 13, 2003 and May 13, 2004 (the "Class Period"), against BEA and certain of its officers and directors for violations of the Securities Exchange Act of 1934 (the "1934 Act").

2.     BEA is a provider of application infrastructure software and related services that help companies build distributed systems that extend investments in existing computer systems and provide the foundation for running an integrated business.  BEA's products have applications in a variety of industries, including telecommunications, commercial and investment banking, securities trading, government, manufacturing, retail, airlines, pharmaceuticals, package delivery and insurance.  The BEA WebLogic Enterprise Platform provides an application infrastructure for building and deploying distributed, integrated information technology environments, allowing customers to integrate private client/server networks, the Internet, intranets, extranets, virtual private networks (VPNs), and mainframe and legacy systems as system components.  The Platform includes BEA WebLogic Server, BEA WebLogic Integration, BEA WebLogic Portal, BEA Liquid Data for WebLogic and BEA WebLogic Workshop.

3.     During the Class Period, defendants issued materially false and misleading statements to the investing public regarding BEA's business and prospects.  Then on May 13, 2004, BEA reported disappointing first quarter results, citing the difficult selling environment and sales execution issues as the primary reasons.  On this news, the Company's shares were rocked, plummeting 30% to $8 per share.

4.     The true facts which were known to the defendants but actively concealed from the public were as follows:

(a)     That the Company was experiencing material sales execution problems in its licensing division. This would result in license reserve being down in the comparable quarter and in the sequential quarter.  This clearly was apparent to defendants as they monitored the Company's North American sales territory on a weekly basis which was consistently well below quota;

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                                    - 1 -

1     (b)     That during the preceding quarter, the Company's sales staff and management

2  were attempting to reorganize; however, in doing so, the Company's sales were actually disrupted.

3  In fact, the head of North American Sales (Alan Fuge) resigned.  The Company's own sales staff did

4  not even know what their territories or quotas were because the Company's executives failed to

5  provide that to them in a timely manner.  Defendant Chuang admitted as much to third parties;

6     (c)     That the Company's WebLogic 8.1 Platform was far from "revolutionary" and

7  was not selling as defendants claimed.  In fact, defendants knew that and admitted to third parties

8  that the WebLogic 8.1 Platform was actually too new in the marketplace to experience strong

9  growth.  Moreover, this would contribute to a year-to-year decline in license reserve – the first time

10  in four quarters;

11     (d)     That the coverage of small and medium-sized businesses was transferred to

12  the General Accounts Team – which disrupted the Company's North American reserves; and

13     (e)     The Company was experiencing weakness in its telecom vertical business –

14  not strength.

15     5.     As a result of the defendants' false statements, BEA's stock price traded at inflated

16  levels during the Class Period, increasing to as high as $14 in early 2004, whereby the Company's

17  top officers and directors sold more than $13 million worth of their own shares.

18                              **JURISDICTION AND VENUE**

19     6.     Jurisdiction is conferred by §27 of the 1934 Act.  The claims asserted herein arise

20  under §§10(b) and 20(a) of the 1934 Act and Rule 10b-5.

21     7.     (a)     Venue is proper in this District pursuant to §27 of the 1934 Act.  Many of the

22  false and misleading statements were made in or issued from this District.

23     (b)     The Company's principal executive offices are in San Jose, California, where

24  the day-to-day operations of the Company are directed and managed.

25                              **THE PARTIES**

26     8.     Plaintiff Richard Curtis purchased BEA publicly traded securities as described in the

27  attached certification and were damaged thereby.

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                              - 2 -

1    9.    Defendant BEA is a provider of application infrastructure software and related

2    services that help companies build distributed systems that extend investments in existing computer

3    systems and provide the foundation for running an integrated business.  BEA's products have

4    applications in a variety of industries, including telecommunications, commercial and investment

5    banking, securities trading, government, manufacturing, retail, airlines, pharmaceuticals, package

6    delivery and insurance.  The BEA WebLogic Enterprise Platform provides an application

7    infrastructure for building and deploying distributed, integrated information technology

8    environments, allowing customers to integrate private client/server networks, the Internet, intranets,

9    extranets, virtual private networks (VPNs), and mainframe and legacy systems as system

10   components.  The Platform includes BEA WebLogic Server, BEA WebLogic Integration, BEA

11   WebLogic Portal, BEA Liquid Data for WebLogic and BEA WebLogic Workshop.

12   10.    Defendant Alfred S. Chuang ("Chuang") was the Chairman, President and CEO of

13   BEA.  During the Class Period, Chuang sold more than $10.3 million worth of his BEA stock.

14   11.    Defendant Charles L. Ill, III ("Ill") was Executive Vice President of Worldwide Sales

15   of BEA.  During the Class Period, Ill sold more than $1.3 million worth of his BEA stock.

16   12.    Defendant Thomas M. Ashburn ("Ashburn") was President of Worldwide Services of

17   BEA.  During the Class Period, Ashburn sold more than $1.3 million worth of his BEA stock.

18   13.    The individuals named as defendants in ¶¶10-12 are referred to herein as the

19   "Individual Defendants."  The Individual Defendants, because of their positions with the Company,

20   possessed the power and authority to control the contents of BEA's quarterly reports, press releases

21   and presentations to securities analysts, money and portfolio managers, and institutional investors,

22   *i.e.*, the market.  Each defendant was provided with copies of the Company's reports and press

23   releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and

24   opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and

25   access to material non-public information available to them but not to the public, each of these

26   defendants knew that the adverse facts specified herein had not been disclosed to and were being

27   concealed from the public and that the positive representations which were being made were then

28   materially false and misleading.  The Individual Defendants are liable for the false statements

1   pleaded herein at ¶¶19-20, as those statements were each "group-published" information, the result

2   of the collective actions of the Individual Defendants.

3                                           **SCIENTER**

4          14.    In addition to the above-described involvement, each Individual Defendant had

5   knowledge of BEA's problems and was motivated to conceal such problems.  Many of the internal

6   reports showing BEA's forecasted and actual growth were prepared by the finance department with

7   the assistance of Ill and Ashburn.  Defendant Chuang, as Chairman, President and CEO, was

8   responsible for the financial results and press releases issued by the Company.  Each Individual

9   Defendant sought to demonstrate that he could lead the Company successfully and generate the

10   growth expected by the market.

11          15.    Defendants were motivated to engage in the fraudulent practices alleged herein in

12   order to reap millions of dollars in insider trading proceeds.

13                      **FRAUDULENT SCHEME AND COURSE OF BUSINESS**

14          16.    Each defendant is liable for (i) making false statements, or (ii) failing to disclose

15   adverse facts known to him about BEA.  Defendants' fraudulent scheme and course of business that

16   operated as a fraud or deceit on purchasers of BEA publicly traded securities was a success, as it (i)

17   deceived the investing public regarding BEA's prospects and business; (ii) artificially inflated the

18   prices of BEA's publicly traded securities; (iii) allowed defendants to obtain larger bonuses which

19   were directly tied to the performance of BEA shares; (iv) allowed defendants to arrange to sell and

20   actually sell in excess of $13 million worth of BEA shares at artificially inflated prices; and (v)

21   caused plaintiff and other members of the Class to purchase BEA publicly traded securities at

22   inflated prices.

23                             **BACKGROUND AND OVERVIEW**

24          17.    BEA reported disappointing first quarter results on May 13, 2004, citing the difficult

25   selling environment and sales execution issues as the primary reasons.  However, these explanations

26   were only half truths and even these were well known to defendants long before they were revealed.

27   Moreover, the Company's second quarter guidance of proforma EPS "similar to Q1," or $0.08 on

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                              - 4 -

1    revenue of $265-$275 million, was below the consensus numbers of $0.09 and $276 million,

2    respectively.

3        18.    Management partially blamed the miss on sales execution issues having to do with

4    structural changes to the sales organization, which defendants claimed were enacted to better

5    leverage the inside sales organization and VAR channel.  Management stated that these changes

6    temporarily disrupted the sales coverage of many current and prospective accounts, but these

7    changes were taking place as defendants were selling their own shares.  In addition, management

8    claimed that suddenly it was taking longer than anticipated for clients to transition to its WebLogic

9    8.1 Platform, which has been out since last July.  BEA had claimed that 8.1 would significantly

10   broaden its addressable market, a claim which was far from realistic.  In addition, the Company's

11   open source application server, JBoss, stalled at the beginning of the Class Period, yet defendants

12   sought to conceal that as well until they could unload millions worth of their shares.

13                          **DEFENDANTS' FALSE AND MISLEADING**
                    **STATEMENTS ISSUED DURING THE CLASS PERIOD**
14

15       19.    On November 13, 2003, the Company issued a press release entitled "BEA Reports

16   Third Quarter Financial Results; Net Income up 17% Year over Year; BEA Developer Count up

     55% Since Introduction of WebLogic Workshop."  The press release stated in part:
17

18       BEA Systems, Inc., the world's leading application infrastructure software company,
         today announced results of its fiscal third quarter.  For the third quarter ended
19       October 31, 2003, BEA reported total revenues of $252.1 million, up 8% from
         $234.0 million in last year's third quarter.  For the third quarter, BEA reported
20       license revenues of $128.2 million, up 2% from $126.1 million a year ago.  In the
         quarter, BEA generated cash flow from operations of $60.0 million, up from $45.3
21       million a year ago.  As of October 31, 2003, BEA's balance of cash and short-term
         investments was approximately $1.4 billion.

22       For the third quarter, on a generally accepted accounting principles
         ("GAAP") basis, BEA reported operating income of $44.9 million, a 34% increase
23       over last year's third quarter.  BEA reported GAAP operating margin of 17.8%, up
         from 14.3% in last year's third quarter.  BEA reported GAAP net income of $29.0
24       million, up 17% from $24.7 million a year ago.  BEA reported GAAP diluted net
         income per share of $0.07 for the third quarter, up from $0.06 last year.  Adoption of
25       FASB Interpretation Number 46, "Consolidation of Variable Interest Entities," (FIN
         46) had a $2.2 million positive impact on GAAP operating income, but no impact on
26       net income.

27       For the third quarter, BEA reported pro forma operating income of $51.7
         million, a 28% increase over last year's third quarter.  BEA reported pro forma
28       operating margin of 20.5%, after including the effect of adoption of FIN 46, up from

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                              - 5 -

1    17.3% in last year's third quarter.  BEA reported pro forma net income of $34.1
     million and pro forma diluted net income per share of $0.08 for the third quarter.  Pro
2    forma results exclude acquisition-related expenses, net gains or losses on investments
     in equity securities, employer payroll taxes on stock options, write-offs of debt
3    issuance costs and other non-recurring charges.  A reconciliation of pro forma
     adjustments is summarized on pages five and six of this release.  For full details on
4    BEA's reported results, see the financial tables accompanying this release.

5              "*With revenue, profit and cash flow all up, our first full quarter shipping
     *BEA WebLogic Platform 8.1 was another solid performance, despite continuing
6    *challenges in the IT spending environment.  Compared to last year's third quarter,
     *our platform business continued to grow and we improved our operating income,
7    *operating margin, and cash flow from operations,*" said Alfred Chuang, BEA's
     *founder, chairman and CEO.  "BEA WebLogic Platform 8.1 is gaining
8    *momentum.  It represents our most significant product transition since we
     *introduced WebLogic application server five years ago.  We believe interest from
9    *customers and partners is growing, and we expect it to be a similar hit, too.
     *Already our leading indicators, such as the increase in our developer base and our
10   *consulting and education business, show that customers are recognizing the
     *promise of 8.1.  It's easy to see why.  Independent research studies and customer
11   *tests show that WebLogic 8.1 delivers revolutionary productivity gains that
     *translate into faster time to value on mission-critical software projects like business
12   *integration and enterprise portals*."

13        20.    On February 19, 2004, the Company issued a press release entitled "BEA Reports

14   Fourth Quarter and Fiscal Year Financial Results; Annual Revenue Tops $1 Billion and Q4 License

15   Revenue Grows 12% over Q3; Annual Net Income Increases 41% over FY 03, as BEA Reports

16   Record Year and Quarter."  The press release stated in part:

17        BEA Systems, Inc., the world's leading application infrastructure software company,
          today announced results of its fiscal fourth quarter and fiscal year.  For the fourth
18        quarter ended January 31, 2004, BEA reported total revenues of $278.1 million, up
          10% from $252.1 million in the third quarter ended October 31, 2003.  For the fourth
19        quarter, BEA reported license revenues of $143.1 million, up 12% from $128.2
          million in the third quarter.  In the fourth quarter, BEA generated cash flow from
20        operations of $63.8 million, and BEA's balance of cash and short-term investments
          was $1,469 million as of January 31, 2004.
21
22             For the fourth quarter, on a generally accepted accounting principles
          ("GAAP") basis, BEA reported operating income of $58.8 million, a 31% increase
23        over the third quarter.  BEA reported GAAP net income of $39.3 million, up 35%
          from $29.0 million in the third quarter.  BEA reported GAAP diluted net income per
24        share of $0.09 for the fourth quarter, up from $0.07 the third quarter.

25             For the fourth quarter, BEA reported pro forma operating income of $64.2
          million, a 24% increase over the third quarter.  BEA reported pro forma operating
26        margin of 23.1%, up from 20.5% in the third quarter.  BEA reported pro forma net
          income of $42.8 million and pro forma diluted net income per share of $0.10 for the
27        fourth quarter.  Pro forma results exclude acquisition-related expenses, net gains or
          losses on investments in equity securities, employer payroll taxes on stock options,
28        write-offs of debt issuance costs, and other non-recurring charges.  A reconciliation
          of pro forma adjustments is summarized on pages five and six of this release.  For

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                                    - 6 -

full details on BEA's reported results, see the financial tables accompanying this release.

For the fiscal year ended January 31, 2004, BEA reported total revenues of $1,012.5 million, an 8% increase over the fiscal year ended January 31, 2003. For fiscal 2004, BEA reported GAAP operating income of $174.7 million, a 31% increase over fiscal 2003. For fiscal 2004, BEA had GAAP net income of $118.7 million, a 41% increase over fiscal 2003. For fiscal 2004, BEA had diluted net income per share of $0.28, compared to $0.20 in fiscal 2003. BEA generated fiscal 2004 cash flow from operations of $212.4 million.

"We are pleased to reach $1 billion in revenue for a fiscal year, and to return to double digit revenue growth. *The R&D investment we made in WebLogic Platform 8.1 is paying off. We enter Q1 with good momentum, and we intend to focus on further expansion of our sales capacity and distribution channel," said Alfred Chuang, BEA's founder, chairman and CEO. "BEA WebLogic Platform 8.1 continues to gain momentum. Independent research studies and customer tests show that WebLogic 8.1 can deliver revolutionary productivity gains that translate into faster time to value on mission-critical software projects like business integration and enterprise portals. Customers are seeing those gains come to life as they work through their initial deployments, and are seeing significant reuse benefits in their follow-on projects. Our approach of converging application development and integration, and simplifying application infrastructure, gives customers a more effective way to build, integrate and deploy enterprise applications and Web service. Customers are achieving increased productivity and return on investment. We believe the platform approach will help revolutionize enterprise IT projects.*"

21.     On May 13, 2004, the Company issued a press release entitled "BEA Reports First Quarter Financial Results; Adoption of Service-Oriented Architectures is Beginning, Helping Businesses Improve Efficiency, Adaptability and Responsiveness." The press release stated in part:

BEA Systems, Inc., the world's leading application infrastructure software company, today announced results of its fiscal first quarter. For the first quarter ended April 30, 2004, BEA reported total revenues of $262.6 million, up 11% from $237.3 million in last year's first quarter. For the first quarter, BEA reported license revenues of $120.2 million, down 2% from $122.3 million a year ago. In the quarter, BEA generated cash flow from operations of $82.1 million, up 103% from $40.5 million a year ago. BEA's balance of cash and short-term investments was $1,561 million as of April 30, 2004.

For the first quarter, on a generally accepted accounting principles ("GAAP") basis, BEA reported operating income of $39.1 million, up 14% from $34.2 million a year ago. BEA reported first quarter GAAP operating margin of 14.9%, GAAP net income of $25.3 million, and GAAP diluted net income per share of $0.06.

For the first quarter, BEA reported pro forma operating income of $50.8 million, a 28% increase over last year. BEA reported pro forma operating margin of 19.4%, up from 16.9% in last year's first quarter. BEA reported pro forma net income of $33.5 million and pro forma diluted net income per share of $0.08 for the first quarter. Pro forma results exclude acquisition-related expenses, net gains or losses on investments in equity securities, employer payroll taxes on stock options, facilities consolidation and other non-recurring charges. A reconciliation of pro

forma adjustments is summarized on page five of this release.  For full details on BEA's reported results, see the financial tables accompanying this release.

"We signed 17 license deals over $1 million dollars in Q1.  While this is the most we've ever signed in a Q1, we are disappointed that we did not meet our license revenue plans, especially in the Americas," said Alfred Chuang, BEA's founder, chairman and CEO.  "Customers are beginning new projects, and many of our consulting engagements ramped up through the course of the first quarter and into the second.  We are encouraged by the opportunities that creates for us, as those projects progress toward deployment throughout the year."

"In live deployments, WebLogic Platform 8.1 is helping customers reduce integration costs, make their developers more productive and build more flexible architectures.  As customers adopt service-oriented architectures, WebLogic Platform provides the infrastructure they need," Chuang continued.   "Service-oriented architectures more closely align IT with business processes, and help businesses improve their efficiency, adaptability and responsiveness.  Customers are focusing on business processes and standard interfaces, rather than underlying technical complexity.  Delivering the promise of service-oriented architectures requires a robust, standards-based, easy to use platform.  BEA WebLogic Platform and BEA WebLogic Workshop help customers quickly and efficiently adopt service-oriented architectures, as evidenced by the projects our customers are implementing.  BEA is well-positioned to help customers achieve new levels of productivity, enterprise compatibility and adaptability."

22.     On this news, the Company's shares were rocked, plummeting 30% to $8 on record volume of 74 million.

23.     The true facts which were known to the defendants but actively concealed from the public were as follows:

(a)     That the Company was experiencing material sales execution problems in its licensing division. This would result in license reserve being down in the comparable quarter and in the sequential quarter.  This clearly was apparent to defendants as they monitored the Company's North American sales territory which was well below quota;

(b)     That during the preceding quarter, the Company's sales staff and management were attempting to reorganize; however, in doing so, the Company's sales were actually disrupted. In fact, the head of North American Sales (Alan Fuge) resigned.  The Company's own sales staff did not even know what their territories or quotas were because the Company's executives failed to provide that to them in a timely manner.  Defendant Chuang admitted as much to third parties;

(c)     That the Company's WebLogic 8.1 Platform was far from "revolutionary" and was not selling as defendants claimed.  In fact, defendants knew that and admitted to third parties

1  that the WebLogic 8.1 Platform was actually too new in the marketplace to experience strong

2  growth.  Moreover, this would contribute to a year-to-year decline in license reserve – the first time

3  in four quarters;

4  (d)  That the coverage of small and medium-sized businesses was transferred to

5  the General Accounts Team – which disrupted the Company's North American reserves; and

6  (e)  The Company was experiencing weakness in its telecom vertical business –

7  not strength.

8  **FIRST CLAIM FOR RELIEF**

9  **For Violation of §10(b) of the 1934 Act and
Rule 10b-5 Against All Defendants**

10

11  24.  Plaintiff incorporates ¶¶1-23 by reference.

12  25.  During the Class Period, defendants disseminated or approved the false statements

13  specified above, which they knew or deliberately disregarded were misleading in that they contained

14  misrepresentations and failed to disclose material facts necessary in order to make the statements

15  made, in light of the circumstances under which they were made, not misleading.

16  26.  Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

17  (a)  Employed devices, schemes, and artifices to defraud;

18  (b)  Made untrue statements of material facts or omitted to state material facts

19  necessary in order to make the statements made, in light of the circumstances under which they were

20  made, not misleading; or

21  (c)  Engaged in acts, practices, and a course of business that operated as a fraud or

22  deceit upon plaintiff and others similarly situated in connection with their purchases of BEA publicly

23  traded securities during the Class Period.

24  27.  Plaintiff and the Class have suffered damages in that, in reliance on the integrity of

25  the market, they paid artificially inflated prices for BEA publicly traded securities.  Plaintiff and the

26  Class would not have purchased BEA publicly traded securities at the prices they paid, or at all, if

27  they had been aware that the market prices had been artificially and falsely inflated by defendants'

28  misleading statements.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                - 9 -

28.     As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of BEA publicly traded securities during the Class Period.

**SECOND CLAIM FOR RELIEF**

**For Violation of §20(a) of the 1934 Act Against All Defendants**

29.     Plaintiff incorporates ¶¶1-28 by reference.

30.     The Individual Defendants acted as controlling persons of BEA within the meaning of §20(a) of the 1934 Act.  By reason of their positions as officers and/or directors of BEA, and their ownership of BEA stock, the Individual  Defendants had the power and authority to cause BEA to engage in the wrongful conduct complained of herein.  BEA controlled each of the Individual Defendants and all of its employees.  By reason of such conduct, the Individual Defendants and BEA are liable pursuant to §20(a) of the 1934 Act.

**CLASS ACTION ALLEGATIONS**

31.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP") on behalf of all persons who purchased BEA publicly traded securities (the "Class") on the open market during the Class Period.  Excluded from the Class are defendants.

32.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  BEA had more than 410 million shares of stock outstanding, owned by hundreds if not thousands of persons.

33.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether the 1934 Act was violated by defendants;

(b)     Whether defendants omitted and/or misrepresented material facts;

(c)     Whether defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1            (d)       Whether defendants knew or deliberately disregarded that their statements

2    were false and misleading;

3            (e)       Whether the prices of BEA's publicly traded securities were artificially

4    inflated; and

5            (f)       The extent of damage sustained by Class members and the appropriate

6    measure of damages.

7        34.    Plaintiff's claims are typical of those of the Class because plaintiff and the Class

8    sustained damages from defendants' wrongful conduct.

9        35.    Plaintiff will adequately protect the interests of the Class and has retained counsel

10   who are experienced in class action securities litigation.  Plaintiff has no interests which conflict

11   with those of the Class.

12       36.    A class action is superior to other available methods for the fair and efficient

13   adjudication of this controversy.

14   **PRAYER FOR RELIEF**

15   WHEREFORE, plaintiff prays for judgment as follows:

16   A.    Declaring this action to be a proper class action pursuant to FRCP 23;

17   B.    Awarding plaintiff and the members of the Class damages, interest and costs; and

18   C.    Awarding such equitable/injunctive or other relief as the Court may deem just and

19   proper.

20   **JURY DEMAND**

21   Plaintiff demands a trial by jury.

22   DATED:  June 9, 2004               LERACH COUGHLIN STOIA

23                                 & ROBBINS LLP
     PATRICK J. COUGHLIN

24

25                                 _____/S/_____

26                                 PATRICK J. COUGHLIN

27                                 100 Pine Street, Suite 2600
     San Francisco, CA  94111

28                                 Telephone:  415/288-4545
     415/288-4534 (fax)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LERACH COUGHLIN STOIA
   & ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
401 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

GELLER RUDMAN, PLLC
PAUL J. GELLER
197 S. Federal Highway, Suite 200
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

Attorneys for Plaintiff

T:\CasesSF\BEA Systems\Cpt BEA Systems2.doc

1

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

2        Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3 named parties, there is no such interest to report.

4                                               _____/S/_____

5                                               ATTORNEY OF RECORD FOR
                                                PLAINTIFF RICHARD CURTIS
6
T:\CasesSF\BEA Systems\Cpt BEA Systems2.doc

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28